Good morning. Thank you, Your Honors. First, I want to thank you for accommodating my schedule. I really do appreciate you changing the order for me. I'm Eric Slepian. On behalf of April Dominguez, I'm going to attempt to reserve two minutes for rebuttal. Please watch the clock. Yes, I will. Okay. So, Ms. Dominguez applied for her Social Security disability benefits back in June of 2009. She ultimately received an unfavorable decision from Judge Kilgannon in 2011. She then filed an appeal with the Appeals Council, which took over a year to get resolved, or about a year to get resolved. And they said they found no reason to review the decision. So we ended up appealing to the District Court. At that point in time, the Commissioner first comes in and says, okay, Ms. Dominguez, we agree, we made a mistake, and we need to send it back. And they could have done that a long time ago. Instead, Ms. Dominguez has to endure this, all this time, without any benefits, difficult access into the medical system. Sure. And we understand the only question in this case is whether the District Court abused its discretion in sending it back to the Commissioner rather than, as you requested, entering an award. So tell us why this record is so clear, that it demands an award, as opposed to having the ALJ do it right, which it didn't do the first time. Well, let me first talk about that District Court order. Because you're right, Your Honor, that's what we're going to review for an abuse of discretion. Right. And Judge Beatty says, in effect, there's a problem with what the ALJ did. The Commissioner concedes that. Yes. I'm going to send it back so they can do it right. That's not her exact words, but I'm paraphrasing. What's wrong with that? Okay. Let's look at what the District Court wrote. So at page 9 of the District Court decision, it says, ''There may be evidence in the record to which the ALJ can point to provide the requisite reason for disregarding the treating physician's opinion.'' In the conclusion, the District Court says that they're remanding so the Commissioner can, and I'm going to quote, ''attempt to provide legally sufficient reasons based on substantial evidence for assigning little weight to the opinions of plaintiffs treating physicians.'' The District Court didn't identify any conflict. They didn't tell us why they were sending it back, other than, we think they should get another shot. And that is what is an abuse of discretion, Your Honor. So wasn't there, there was some medical evidence in the record or evidence in the record that would, if believed, would be contrary to your client's claim, correct? The District Court does not tell us that. I know. The District Court didn't, but we've looked, but we have the record. Maybe the District Court didn't spell it out in great detail, but when you look at this record, there's some contrary evidence in the record. It's the kind of case we'd expect a finder of fact to make decisions in. So why is it why should we say that your client gets benefits even if the record doesn't compel that conclusion? So I respectfully disagree that there's a conflict in the record, and let me tell you why, Your Honor. So the District Court says there's a conflict between the treating physician opinion and the opinion of Dr. Preeve and Dr. Jenkinson, right? Dr. Preeve is not an acceptable medical source. Now, let me question you about that. I looked at the regulation for what's an acceptable medical source, and it doesn't have any carve-out for someone who is an authorized physician in Arizona. It doesn't have any carve-out for someone who was just because they were put on probation in some other State. Now, I know the government concedes this issue, but I didn't see that in the regulations. In fact, it seems that it would be an abuse of discretion or an error not to consider the medical information of a doctor who's authorized in Arizona. The regulation you cited in your briefs, when read in context, just says the Department can't hire him for consultative services. So help me understand why he's not an acceptable medical source. So the carve-out, Your Honor, is for a physician whose license has been revoked in another State. Can you point to that in the regulation for acceptable medical source? If it's not in the regulation that I cited, Your Honor, then I'm going to have to assume that it's not clearly stated in there. I would not be able to do that as I stand here today. Okay. That regulation doesn't say he's not an acceptable medical source. And it really has not been an issue, because it's come up in other cases. Obviously, this physician was used a lot, and the Commissioner has agreed they're not an acceptable medical source. And they agreed in this case. So even though the briefing or the citation might not be a fine pinpoint citation, because it's an accepted fact, I'm hoping the Court accepts that. Okay. I don't know that the government can concede an error of regulations. But in any event, when I was going through the record, the government makes the argument that Dr. Bokda's opinion was inconsistent with his treatment notes, which seemed to be the case. So it did seem like there were, and then there were Dr. Jeckinson and others. So it did seem that there were a number of inconsistencies and conflicts in the record. And under our opinions, your brief didn't address our opinions in Treichler and Burrell, which say we first have to look, that we, the appellate court, first have to consider whether there's conflicts in the record that haven't been resolved. So how do we handle these conflicts that were identified by the government? Well, the only conflict that they identified is a claim that there is a lack of objective findings, being normal strength, normal range of motion, things to that effect. But that does not impact the treating physician's opinion as to the effect of Ms. Dominguez's pain. And there's no dispute that she suffers pain. It's well documented here. She even has been the subject of a favorable determination. So Dr. Bokda says she can't use her right and left foot in one of his things, but then in this check-the-box form. But then in the treatment notes, says there's no limit to range of motion, there's no muscular skeletal problems, she should exercise. So there certainly seems to be an inconsistency from, at least from a layperson's perspective. If I could address that, Your Honor. With respect to the use of the legs, yes, he checked the box. They're different at different periods of time, which could be explained by medical records. But more importantly, when we're talking about a remand for a computation of benefits, we're looking to see if there's a substantial conflict that needs to be resolved. Whether she's got difficulty with that leg or not, it does not affect the doctor's opinion on how long she can sit, stand, walk, lift and carry. And those are the limitations that are consistent with disability. It also does not affect the doctor's opinion as to the degree of pain, which the vocational expert testified would preclude her from sustaining work. Is the record clear on the onset date of disability? So in my opinion, yes, but I would have to address that further with you, Your Honor. So if we look at the record, because now you're outside the opinion of Dr. Levine, right? Right. So what I'm saying, there has to be you say there should be a remand for calculation of benefits. I'm saying perhaps there has to be a remand also to determine what the onset date is. And if so, does your client really is there any real problem with just not remanding for everything? So in response to that, Your Honor, first, that issue was brought up here at the Ninth Circuit by the Commissioner. It's really an issue that was waived. But I respect that the Court will likely go through the record, at least to make sure that there's evidence of disability going back. So I'm going to point you to the testimony of the vocational expert. And that vocational expert basically said that if we accept what the judge found as a residual functional capacity, but we add to it that there's only occasional interaction with co-workers and occasional interaction with the public, all work is precluded. Going back to 2006, there is very well documented panic, agoraphobia. I am afraid to leave the house. I have difficulty shopping. I have to go with people. And so if you're going to search the I have to look at that. And that goes all the way back to 2006. But what — I guess I'm a little bit unclear as to what you want us to do at this point. Because if I understand correctly, she's now getting benefits, right? She's currently on benefit. That's correct. So the only thing left to decide is the onset date, right? Well, yes and no. Okay? So we have to decide whether she was disabled as of an earlier date, because there's a difference between the type of benefit she's receiving, which is supplemental security income, and the type of benefits that she's entitled to, which would include disability insurance benefits. So the amounts are different. The access to medical providers is also different. One's covered under Medicaid or access in Arizona, and the other one is covered through Medicare. And it makes a big difference to these individuals as to who they could see, what kind of medications are going to be covered, and that. So it's bigger than just, let's figure out a date. It's more, which benefits is she entitled to? Your time has expired. Thank you. I will give you a minute for rebuttal. I appreciate that. Okay. We'll hear from the government. Good morning, Your Honors. May it please the Court, my name is Laura Rigel-Boltz, and I'm here representing the Acting Commissioner of Social Security, Carolyn Colvin. The question before this Court is whether the district court abused its discretion in fashioning the remedy that it did. The district court remanded this case for further proceedings because there was evidence to which the ALJ could point to provide the requisite means for disregarding Dr. Koticka's opinion, and that the ALJ was in a better position than the court to perform this task. The district court's decision to remand for further proceedings instead of immediate calculation of benefits was logical and based on plausible inferences drawn from the facts of the record. Are we required, or can we at this point, take Dr. Bakta's testimony as true, under the Ninth Circuit credit-as-true rule? No, Your Honor. This Court is not required to credit. No, I know we're not required to. Can we take it as true? Theoretically, the Court can, except for the fact that there are the Court has to first determine whether the record has been fully developed and whether there are outstanding issues that must be. Well, the record was fully developed. You're not suggesting you need to put in more evidence, are you? No, I'm not. So we said in Treichler where there is conflicting evidence and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate. So is there conflicting evidence and all essential factual issues have been resolved here? Well, there are conflicts in the record, Your Honors. There are conflicts between the medical opinions in this case. There are conflicts between Ms. Dominguez's own statements to her doctors. And because of that, I think Treichler instructs that when there are these kinds of conflicts, the case should be remanded to resolve those conflicts. Are there conflicts if we credit Dr. Bakta's testimony as true? There are conflicts within his own treatment records and with the opinions of the other doctors. For instance, so ---- Before you go on, ask the other doctors, because this will be a quick question. Mr. Slepian said that you now concede that one doctor's opinion can't be used. Is that correct? Well, I think that the agency's position on Dr. Preeve is a concern about program integrity, Your Honor. Sure. My question is for us. Do we ---- Is it your position that we should pay attention to his opinion or not? I think that our position is that you should not pay attention to his opinion. However, I think it's fair to look at her own statements to Dr. Preeve during that time. Sure. That's a separate issue. I just wanted to find out what you're ---- I didn't mean to take you off track, but sooner or later we were going to ask you this. Right. We ---- It's the Commissioner's ---- It's been the Commissioner's position in the past that Dr. Preeve shouldn't be used as a source. So if Dr. Preeve had given favorable evidence and said that Ms. Dominguez was totally disabled, would you say that the ALJ could not consider that evidence? I would, yes, Your Honor. And so even though he ---- it meets with the medical ---- acceptable medical source regulation, wouldn't that be an error for the ALJ to disregard that information? Well, I don't think that the ALJ ---- I'm not sure if it would be an error for the ALJ to disregard that. I think it would be fair for the ALJ to disregard that. Doesn't that go to weight? Does it go to the weight of the evidence? It can go to the weight, yes. Because he's on probation in a different State? Right. Right. It does go to the weight. And I think that in the past, the Commissioner has actually asked to voluntarily remand a number of the cases where Dr. Preeve provided opinions. So let me put this differently, then. If we agree with you and remand this case to the ALJ, the Commissioner will take ---- will say ignore Dr. Preeve's? I don't think that the Commissioner will say to ignore the whole entire report,  you can use her statements out of the report, but not his opinion. Right. Not his opinion. No. I'm sorry. You were answering another question when I took you off track. I think I was talking about how Dr. Bodka's opinion was inconsistent with his own treatment notes. For instance, I think as the Commissioner pointed out in her brief, the treatment notes dated the same date as those opinions really showed almost no objective findings to support his opinion of extreme limitations. For instance, on April 9th, Dr. Bodka found that she had no neurological deficits. She had full range of joint motion. She had good muscle tone and no edema. Later on in October of 2010, Dr. Bodka found those same normal findings. And then he advised her to exercise, which is our position that it's pretty inconsistent with an opinion of such extreme limitation to then go ask her to exercise. Also, I think that the opinions of these other doctors need to be compared to Dr. Bodka's opinion. For instance, the podiatrist said in June 2009 that Ms. Dominguez had no physical disability and her activities of daily living were normal, which seems to really conflict with Dr. Bodka's opinion about her severe limitations. So even if the Court would want to credit Dr. Bodka's opinion, I don't think it's true. There are outstanding issues, as the Court noted before. So we said in Treichler and in Burrill, I believe, that we need to first resolve conflicts before we can hold that the claimant's testimony is credible as a matter of law. So are you suggesting that you could we would have the authority to credit as true before identifying conflicts, before considering whether there are conflicts in the record? I'm not sure I understand your question. I understood from our precedent that first we have to determine whether there are conflicts in the record. Only if there are no conflicts in the record can we then go forward to credit testimony as true. But I thought in your response to Judge Hurwitz, you were saying the opposite. Well, I think that there's And I ask because I have no idea what our credit as true rule is. So I was hoping you would help me. So tell me what you think it is. Well, I think that the credit as true rule is, the first question is, did the ALJ provide legally sufficient reasons for rejecting? And you concede that here. And we concede that he didn't. We asked this Court to affirm the district court's agreement. But Judge Acuda's question is the one that I was hoping to get some guidance on, which is that, assume that you didn't give sufficient reasons, is this a case where we should credit as true, or is it should we not because there are conflicts in the record? It's our position that you should not credit as true because there are conflicts. But beyond those conflicts, there are also fact of more issues that need to be resolved, particularly the onset date, Your Honor. There is a prior application that was filed in 2008. It could theoretically be reopened. A fact finder needs to look at that and see whether or not that's the case, whether or not it should be opened. There is also a subsequent favorable decision that was given to Ms. Dominguez. But in that favorable decision that we considered that, was that part of the district court's record? This was not part of the district court's. So it's not really before us, correct? No, it's not. But could the ALJ consider it on remand? The ALJ could consider it on remand. Because it would be on an open record. Right. Right. If the court remands the case for further proceedings, the whole entire case goes back for de novo review. And so the issue will be whether or not what her alleged onset date was, whether that prior application could be reopened, at what point the onset date is. And it will be a decision through the date of the later finding that she became disabled in June of 2011. So there's this time period that needs to be addressed by the court or by the ALJ. And the only way for that to happen is for the court to remand it. Otherwise, the court is left in the position of trying to figure out what that onset date is itself, which I don't think is the purview of the court. Is the standard different for supplemental benefits as opposed to disability benefits? Well, disability insurance benefits are only available to a claimant who is fully insured for those benefits. I understand that. I mean, is the legal standard determined if a person is disabled different? No. It's the same. So basically, is that SSI determination binding on the ALJ? Yes. Yes, it will be binding. So really, then it just becomes whether or not she filed an application within the time limit that would allow her to get disability benefits? That's correct, Your Honor. I'm not understanding. I thought the subsequent opinion was with a specific disability onset date. So that wouldn't cover necessarily the time frame before this ALJ. Well, that's right, Your Honor. The finding of that subsequent ALJ was that she became disabled four months after the first ALJ's decision. So there's that four-month gap. And the new ALJ will look at the case, or the same ALJ, whoever gets the case back, will look at the case through the date of that June 11th onset. Thank you. Thank you, Your Honor. All right. We'll give you a minute for rebuttal. Thank you, Your Honor. I want to address this exercise issue, because I've heard it brought up a couple of times now. So Dr. Botka said that he recommended that she exercise 30 minutes a day, five days a week. Now, if you look at Dr. Botka's opinion as to what Ms. Dominguez can do, he says she can sit for less than three hours, stand or walk less than two hours. You can exercise for 30 minutes based on the restrictions that the treating physician assessed. All of her daily activities can be performed within the restrictions the doctor assessed. And there is no conflict. And they should not get another chance to, as the district court says, attempt to provide legally sufficient reasons. The district court should have said, these they are. This is what we're doing. This is why we're doing it. That's what we review for an abuse of discretion. Dr. Preeve's opinion doesn't belong here anymore. Dr. Jenkinson's opinion, which we haven't had a chance to discuss, the judge already rejected. So we don't have to get into it. Thank you. Thank you. Okay, the case of Dominguez v. Colvin is submitted. We'll next hear argument in Reyes v. Smith and Heatley.
judges: Ikuta, Hurwitz, Melloy